**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

YULON WIMBUSH,

     Plaintiff,

     v.

KAISER FOUNDATION HEALTH PLAN
OF THE MID ATLANTIC STATES, INC.,
*d/b/a Kaiser Permanente*,

     Defendant.

Civil Action No. TDC-14-0525

**MEMORANDUM OPINION**

This matter is before the Court on a Motion for Partial Dismissal filed by Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), ECF No. 27, in which Kaiser moves to dismiss Counts 1-2, 6, 8-10, 12-17, and parts of Counts 3 and 5, of the 17-count Amended Complaint filed by Plaintiff Yulon Wimbush ("Wimbush"). Having reviewed the pleadings and the briefs, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

**I.     The Virginia Allegations**

Wimbush is an African American woman who began working at Kaiser's call center in Fair Oaks, Virginia in October 2009. Am. Compl. at 3 ¶ 1, ECF No. 24. Wimbush alleges that in or around July 2010, she began experiencing sexual harassment from her then supervisor Chris Veney ("Veney") in the form of repeated, unwelcome comments and other conduct which created a hostile work environment. *Id.* at 3-7 ¶¶ 3-24. As a result, she suffered "severe depression and mental pain," and on one occasion her extreme stress and fear caused her to be

taken to the hospital by paramedics. *Id.* at 5 ¶ 11, 7 ¶ 21. Wimbush and others notified Veney's supervisor of the conduct, but no action was taken. *Id.* at 4-5 ¶ 9, 6 ¶ 20, 7 ¶ 22, 8 ¶ 27.

## II.    The Maryland Allegations

In or around January 2011, Wimbush applied for and received a transfer to Kaiser's Shady Grove, Maryland location, where she worked as a full-time receptionist in an outpatient healthcare facility. *Id.* at 8 ¶ 1. In March 2012, she was transferred to another receptionist position at Kaiser's outpatient facility in Gaithersburg, Maryland. *Id.* at 8 ¶ 2. At the Gaithersburg location, Wimbush's direct supervisor was Katherine Butler ("Butler"), who was the Medical Center Administrative Director. *Id.* at 8 ¶ 3. In or around May 2012, Wimbush began serving as a union shop steward at that location for the Office and Professional Employees International Union. *Id.* at 8 ¶ 4.

Wimbush alleges that after she became a union shop steward, "Butler's behavior towards the Plaintiff began to change drastically for the worse." *Id.* at 8 ¶ 5. For example, when Wimbush sought a new position as a therapist aide in November 2012, Butler told the Kaiser official who was checking references on Wimbush that she was "notorious" for taking leave under the Family Medical Leave Act ("FMLA"), which caused Wimbush to lose the position. *Id.* at 9 ¶¶ 6-7. In December 2012, when Wimbush requested FMLA leave in order to care for her minor son, Butler denied her request and told her to "provide the child with medication and leave him home." *Id.* at 15 ¶¶ 5-7.

Wimbush also alleges that Butler discriminated against her on the basis of her race. She asserts that Butler required Wimbush to work without clerical assistance as a receptionist, even though she provided clerical support for two white receptionists; that Butler ignored Wimbush's requests for time off; that Butler shut the door on Wimbush; that Butler refused to give Wimbush

2

feedback, even though Butler provided "assistance and care" to white employees; that Butler altered Wimbush's schedule and gave her "better" shift to a white coworker; and that Butler took credit for a proposal Wimbush had created. *Id.* at 9-11 ¶¶ 9, 11, 12-14, 17; 18 ¶ 12. Wimbush informed Butler's supervisor about the unfair treatment, but no action was taken. *Id.* at 10 ¶ 15.

Wimbush further alleges that in or around July 2013, an African American employee, Jessica Station ("Station"), approached her to express "serious concerns" about Butler "being a racist" who "treated her and the African American workers disparately from the Caucasian workers." *Id.* at 11 ¶ 18-19. At Station's insistence, Wimbush attended, in her role as union shop steward, a meeting between Butler and Station to discuss the issues between them. *Id.* at 11 ¶ 22. Then in or around August 2013, Wimbush was called into a meeting with Kaiser's Compliance Department and informed that there were rumors that Wimbush had called Butler a racist, and that the company considered such comments to be outside her role as a union shop steward. *Id.* at 12 ¶ 24-25. Although she denied making such comments, Wimbush was abruptly informed in September 2013 that she had been terminated for making false and malicious statements about management or personnel. *Id.* at 12 ¶ 27.

## III.   The Complaint

On February 24, 2014, Wimbush, proceeding *pro se*, filed a one-count Complaint against Kaiser for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* (2012), on the basis of Butler's conduct. ECF No. 1. After Kaiser filed its Answer, ECF No. 9, the Court issued a Scheduling Order and discovery commenced on May 2, 2014, ECF No. 10. When Wimbush obtained Counsel, she filed a Motion to Amend the Complaint, ECF No. 18, and a Motion to Amend the Scheduling Order, ECF No. 19. The Court granted both Motions. ECF Nos. 20, 26. On October 6, 2014,

3

Wimbush filed an Amended Complaint adding sex discrimination claims on the basis of Veney's conduct, as well as various tort claims and additional discrimination claims on the basis of both Veney's and Butler's conduct.

The specific counts, as numbered in the Amended Complaint, are as follows: (1) race discrimination under Title VII based on Butler's conduct ("the Maryland allegations"); (2) retaliation under Title VII arising from Wimbush's role in assisting Station in reporting race discrimination; (3) disparate treatment under Title VII, both on the basis of sex, relating to sexual harassment by Veney at the Virginia facility ("the Virginia allegations"), and on the basis of race, relating to the Maryland allegations; (4) hostile work environment under Title VII, based on the Virginia allegations; (5) violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, *et seq.* (West 2014), based on the same conduct underlying all of her Title VII claims; (6) violation of Section 5 of the Montgomery County Personnel Regulations, Montgomery Cnty., Md., Personnel Regs. § 5-2 (2008), based on the same conduct underlying all of the Title VII claims; (7) sex discrimination under Title VII, based on the Virginia allegations; (8) sex discrimination under the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900–3903 (West 2014), based on the Virginia allegations; (9) race and sex discrimination under the Fairfax County Human Rights Ordinance, Fairfax Cnty., Va., Code § 11-1-5 (2010), based on the same conduct underlying all of the Title VII claims; (10) wrongful termination in violation of Maryland public policy, based on the Maryland allegations; (11) violation of the FMLA, 29 U.S.C. §§ 2611–2654, based on Butler's denial of Wimbush's leave requests and Butler's statement regarding Wimbush's use of the FMLA; (12) negligent, wanton, and intentional conduct, based on both the Virginia and Maryland allegations; (13) negligent retention, training, and supervision, based on both the Virginia and

4

Maryland allegations; (14) vicarious liability; (15) intentional infliction of emotional distress, based on both the Virginia and Maryland allegations; (16) invasion of privacy, based on Butler's statement relating to Wimbush's use of the FMLA, contained in the Maryland allegations; and (17) false light, based on that same statement.

## DISCUSSION

## I.     Legal Standards

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Before filing suit under Title VII, a plaintiff is required to file an administrative charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e–5(f)(1).  Under the precedent of the United States Court of Appeals for the Fourth Circuit, a failure to exhaust administrative remedies under Title VII should be addressed by way of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[1]  *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009).  On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving that subject matter jurisdiction exists.  *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  In considering a motion to dismiss for lack of subject matter jurisdiction, the court "is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

---

[1] Whether failure to exhaust administrative remedies is always a subject matter jurisdiction question has not been definitively established.  The Supreme Court has noted that "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), and has "cautioned . . . against profligate use of the term . . . 'jurisdictional.'" *Union Pac. R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 558 U.S. 67, 82 (2009).  Notably, the Fourth Circuit has held that the question of whether an administrative claim was timely filed with the EEOC is *not* jurisdictional.  *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002).

## B. Motion to Dismiss for Failure to State a Claim

In order to defeat a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads *factual content* that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). In assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Failure to Exhaust Administrative Remedies

Kaiser argues that Wimbush's race discrimination claims arising from the Maryland allegations must be dismissed for lack of subject matter jurisdiction because the Amended Complaint fails to allege that they were administratively exhausted. These claims include Count 1 (race discrimination in violation of Title VII), Count 2 (retaliation in violation of Title VII), and the race discrimination parts of Count 3 (disparate treatment under Title VII) and Count 5 (violation of the MFEPA).

Title VII requires a plaintiff to file an administrative charge of discrimination with the EEOC and obtain a right to sue letter from the EEOC before filing suit. 42 U.S.C. § 2000e–5(f)(1). The MFEPA also requires a plaintiff, prior to bringing a civil action, to file a "timely administrative charge or a complaint under federal, State, or local law." Md. Code Ann., State

Gov't § 20-1013(a)(1). The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Although a charge is typically set forth on an official EEOC Form 5 "Charge of Discrimination," it need not be received on that form, so long as it is in writing and contains the information required under 29 C.F.R. § 1601.12.[2] *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 404-05 (2008) (holding that a filing with the EEOC constitutes a charge where it meets the regulatory definition of a charge and can be read, as a whole, as a request for the EEOC to act). Here, as the EEOC explained in a letter to Wimbush's attorney, the EEOC explicitly accepted Wimbush's Intake Questionnaire as constituting the charge in her case, and no EEOC Form 5 Charge was drafted because the Intake Questionnaire "satisfied all of the five indicia of a charge, and because Ms. Wimbush's allegations were assessed that no further investigation would be undertaken by the EEOC." *See* April 9, 2015 Letter, ECF No. 45-1 at 18.

Based on a review of the Intake Questionnaire, the Court determines that Wimbush has exhausted her administrative remedies for the claims in Counts 1-2 and the parts of Counts 3 and 5 alleging race discrimination. The scope of a civil action is determined by "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant*, 288 F.3d at 132 (internal citation and quotation marks omitted). In the Intake Questionnaire, Wimbush checked the boxes for "Race" and "Retaliation" as bases for her employment discrimination claims. *See* Intake Questionnaire, ECF No. 45-1 at 20. She also alleged that, beginning in November 2012, she was victim to a "false and degrading reference to

---

[2] The information required by regulation is: (1) the full name, address and telephone number of the person making the charge; (2) the full name and address of the person against whom the charge is made; (3) a clear and concise statement of the facts; (4) the approximate number of employees of the employer; and (5) a statement disclosing whether proceedings involving the alleged unlawful practice have been commenced before a state or local agency. 29 C.F.R. § 1601.12(a).

prevent promotion or job offer," and "unjust termination," and that the person responsible was "Katherine Butler."[3]  *Id.*  Wimbush's claims for race discrimination in violation of Title VII and the MFEPA allege, among other related events, that Butler refused to provide Wimbush with clerical assistance and feedback that similarly situated white coworkers received, Am. Compl. at 17-18 ¶¶ 8, 10, and that Butler reassigned Wimbush's "better" shift to a white coworker, *id.* at 18 ¶ 12.  The Amended Complaint also pleads retaliation (Count 2), alleging that Wimbush was terminated for her involvement as a union shop steward in a race discrimination grievance against Butler by Jessica Station, an African American coworker.  *Id.* at 19-21.  The Court concludes that Wimbush's claims are reasonably related to the allegations in the EEOC charge and were therefore properly exhausted.  Furthermore, on November 22, 2013, the EEOC issued to Kaiser a Notice of Charge of Discrimination, providing Kaiser with notice that Wimbush had filed claims against it for discrimination on account of race and retaliation alleged to have occurred between November 30, 2012 and September 10, 2013.  *See* Notice of Charge of Discrimination, ECF No. 45-1 at 7.  Thus, Kaiser's motion to dismiss Counts 1-2 and parts of Counts 3 and 5 is denied.

Although the Court has determined that it has subject matter jurisdiction over Wimbush's race discrimination claims in Counts 1-3 and 5, the Amended Complaint is technically flawed in that it fails to include any allegations relating to the exhaustion of administrative remedies, either relating to the race discrimination and retaliation claims discussed above, or the sex

---

[3] In the Intake Questionnaire, Wimbush also checked the box for "Disability" as a basis for discrimination, and alleged that she asked for disability-related assistance to "sometimes leave" and for "dimmer lights," but that the employer was "reluctant."  Intake Questionnaire, ECF No. 45-1 at 20-21.  She also made reference to an "FMLA issue," and stated that "migraines," for which "FMLA paperwork" was submitted, were a basis for discrimination.  *Id.*  Furthermore, she made various allegations that she was unfairly treated and "targeted due to me being union shop steward."  *Id.*  Wimbush's claims related to these allegations are not at issue on this Motion to Dismiss for Lack of Subject Matter Jurisdiction.

discrimination claims based on the Virginia allegations (Counts 4 and 7 and parts of Counts 3 and 5), for which Kaiser has conceded that Wimbush filed an EEOC charge, Mot. Dismiss at 20 n.6; Reply at 4 n.1, ECF No. 34. The Fourth Circuit has held "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995). Thus, the Court directs Wimbush to cure the deficiently pleaded jurisdictional allegations regarding administrative exhaustion. The Court's order to correct the Amended Complaint applies to the jurisdictional statement only, and should not be understood as granting Wimbush leave to amend other allegations in the Amended Complaint.

### III. Motion to Dismiss for Failure to State a Claim

Kaiser seeks dismissal of Counts 6, 8-10, and 12-17 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court grants Kaiser's motion as to each of these claims.

#### A. Count 6: Montgomery County Personnel Regulations

In Count 6, Wimbush alleges that Kaiser discriminated against her on the basis of race and sex, in violation of Section 5 of the Montgomery County Personnel Regulations, Montgomery Cnty., Md., Personnel Regs. § 5-2.[4] Section 5 provides that Montgomery County must "enforce Federal, State, and local laws that prohibit discrimination in the workplace" and must "conduct all employment activities in a manner that ensures equal employment opportunity for all persons without regard to race, color, religion, national origin, ancestry, sex," and several other protected classes. *Id.* § 5-2(b). It further provides than an employee must not

---

[4] The Montgomery County Personnel Regulations are available on the County's Office of Human Resources website: http://www.montgomerycountymd.gov/ohr/labor/regulation.html (last visited April 29, 2015).

"discriminate against or harass another employee on the basis of race[,] . . . sex," and other protected categories, and must not "retaliate against a complainant." *Id.* § 5-2(e). Because the sex discrimination claims relate only to the Virginia allegations, the Personnel Regulations of Montgomery County, Maryland, could only conceivably apply to the race discrimination claims arising from the Maryland allegations.

This claim fails for multiple reasons. First, the Montgomery County Personnel Regulations generally apply to "employees of the County government." *Id.* § 2-2. Wimbush does not claim that Kaiser is a part of the Montgomery County government, or that she is an employee of the County government. Second, Section 5 states that the equal employment opportunity policy applies to "all individuals currently employed by the County, seeking County employment, or conducting business with the County," *id.* § 5-3(a)(1), but Wimbush has not alleged that she, Kaiser, or any of the employees referenced in the Amended Complaint are "conducting business with the County." Wimbush's argument that the Montgomery County Personnel Regulations apply to Kaiser because Kaiser conducts business *within* Montgomery County lacks merit. Section 5-3(a)(1), does not, as Wimbush argues, establish "an anti-discrimination policy for businesses, such as Kaiser, that provide services to Montgomery County resident(s)." Resp. Mot. Dismiss at 9. Rather, the Court reads § 5-3 as affording protection from harassment or discrimination to those individuals who conduct business directly with the County government. Notably, the Personnel Regulations are issued pursuant to the Montgomery County Charter, which provides the County Executive's authority to administer and implement a merit system for officers and employees of the County government. *See* Montgomery Cnty, Md., Personnel Regs. § 2-1; Montgomery Cnty, Md., Cnty. Charter art. 4, appx. A §§ 401-402. It is not clear that there would be a lawful basis for these regulations to

apply to the non-governmental activities of a private business, nor does Wimbush cite to any such authority. Thus, because the Montgomery County Personnel Regulations do not apply to Wimbush, Count 6 fails to state a claim and will be dismissed.

## B. Count 8: Virginia Human Rights Act

Count 8 of the Amended Complaint alleges that Kaiser engaged in sex discrimination against Wimbush based on the Virginia allegations, in violation of the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900–3903. The VHRA affords a private cause of action to employees who have been discharged "on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, including lactation" by an employer "employing more than five but less than 15 persons." *Id.* § 2.2-3903(B)-(C). Here, the Amended Complaint fails to allege that Kaiser employs between five and 15 employees, likely because she cannot allege that Kaiser is such a small employer.

Wimbush argues that, under *Lockhart v. Commonwealth Education Systems Corp.*, 439 S.E.2d 328 (Va. 1994), a private cause of action for discriminatory discharge based on race and gender is permitted regardless of the number of employees at Kaiser because it reflects a public policy contained in a Virginia statute, in this case, the VHRA. Resp. Mot. Dismiss at 10. In *Lockhart*, however, the claim was not a statutory cause of action under the VHRA, but a common law claim of wrongful discharge in violation of public policy. 439 S.E.2d at 328-30. Even if Count 8 were to be construed as alleging such a common law claim, it would still be invalid. One year after *Lockhart* was decided, the Virginia General Assembly amended the VHRA to provide explicitly that "[c]auses of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." Va. Code Ann.

§ 2.2-3903(D). In doing so, the General Assembly abrogated *Lockhart* and "alter[ed] the common law," such that causes of actions based on violations of the policies reflected in the VHRA are now limited to the available federal, state, or local statutory causes of action. *Doss v. Jamco*, Inc., 492 S.E.2d 441, 446 (Va. 1997); *see also Conner v. Nat'l Pest Control Ass'n*, 513 S.E.2d 398, 399-400 (Va. 1999). Because a statutory cause of action under the VHRA is unavailable due to the number of employees at Kaiser, and a common law action based on the public policy contained in the VHRA is unavailable under *Doss*, Count 8 fails to state a claim and is dismissed.

### C. Count 9: Fairfax County Local Human Rights Ordinance

Count 9 of the Amended Complaint alleges that Kaiser discriminated against Wimbush on the basis of race and sex in violation of the Fairfax County Human Rights Ordinance, Fairfax Cnty., Va., Code § 11-1-5.[5] Section 11-1-5 makes it "unlawful for any employer on the basis of . . . race . . . [or] sex . . . [t]o discharge an employee." Fairfax Cnty., Va., Code § 11-1-5(a)(2). Because the race discrimination claims all relate to the Maryland allegations, this claim, at most, relates to the sex discrimination described in the Virginia allegations.

A sex discrimination claim under the Fairfax County Local Human Rights Ordinance nevertheless fails because the Ordinance does not provide a private right of action. *Lawrence v. Mars, Inc.*, 955 F.2d 902, 907 (4th Cir. 1992) (holding that there is no private right of action for employment discrimination claims under the Fairfax County Human Rights Ordinance).

Wimbush argues that because the United States District Court for the Eastern District of Virginia concluded in *Bradley v. Carydale Enterprises*, 730 F. Supp. 709 (E.D. Va. 1989), that

---

[5] The Code of Fairfax County, Virginia is available on the County's Office of Human Rights and Equity Programs – Human Rights Division's website: http://www.fairfaxcounty.gov/ohrep/hrd/human_rights_ordinance.pdf (last visited April 29, 2015).

there was a private right of action under the fair housing provisions of the ordinance, *id.* at 724-26, this Court may infer that a private cause of action is necessarily implied for employment discrimination claims.  This argument is unpersuasive because *Lawrence* post-dates *Bradley*, interpreted the same language considered in *Bradley* in a contrary way as applied to employment discrimination claims, and is controlling authority in the Fourth Circuit.  *Lawrence*, 955 F.2d at 907.  Thus, Count 9 fails to state a claim and will be dismissed.

### D.  Count 10: Wrongful Termination in Violation of Maryland Public Policy

Count 10 alleges a common law tort claim for wrongful termination in violation of Maryland public policy arising from Wimbush's termination described in the Maryland allegations.  Federal courts sitting in diversity apply the law of the state in which the court is located, including the forum state's choice of law rules.  *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  Under Maryland law, the tort doctrine of *lex loci delicti* provides that the substantive law to be applied in a tort case is that of the state in which the alleged wrong occurred, in this case, Maryland.  *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000).  Maryland law recognizes wrongful termination claims, known as abusive discharge claims, for at-will employees whose termination "contravenes some clear mandate of public policy."  *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981).  Abusive discharge claims, however, are limited to instances that otherwise would not be vindicated by a statutory remedy.  *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (Md. 1989).

In other words, the tort is designed to fill gaps in statutory coverage.  When a plaintiff is terminated in a way that violates some public policy, but there is no statute protecting against such conduct, then the plaintiff may bring an abusive discharge claim to remedy the harm.  *See Chappell v. S. Md. Hosp. Inc.*, 578 A.2d 766, 770 (Md. 1990) (noting that an abusive discharge

13

claim "will not lie where the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy"). But when a plaintiff has an available remedy under a federal or state statute, there is no need to file a wrongful termination claim, and the plaintiff is precluded from doing so. *See id.* at 770; *Makovi*, 561 A.2d at 190.

In Count 10, Wimbush alleges that Kaiser's "motivation for the discharge contravenes a clear mandate of public policy against Title VII of the Civil Rights Act." Am. Compl. at 33 ¶ 11. She alleges no other sources of public policy as the source of her tort claim. Because a statutory remedy for employment discrimination exists under both federal and state law, pursuant to Title VII and the MFEPA, respectively, Maryland law does not permit a common law wrongful termination claim based employment discrimination. *Makovi*, 561 A.2d at 190 (holding that a wrongful termination tort claim is unavailable in cases of discharge motivated by employment discrimination barred by Title VII).

In her Response to the Motion to Dismiss, Wimbush argues for the first time that the Court should construe Count 10 as alleging an abusive discharge claim on the basis of a violation of Wimbush's free speech rights under the United States Constitution and the Maryland Constitution. Resp. Mot. Dismiss 13-14. However, Count 10, which was drafted and filed by counsel, explicitly alleges that: "The Defendant's motivation for the discharge contravenes a clear mandate of public policy against Title VII of the Civil Rights Act." Am. Compl. at 33 ¶ 11. Nowhere in Count 10, or in any other part of the Amended Complaint, does Wimbush make mention of free speech rights under either the United States or Maryland Constitutions. Thus, Count 10 is dismissed.

## E. Count 15: Intentional Infliction of Emotional Distress

Count 15 alleges that "Defendant's agents and employees," specifically Veney and Butler, engaged in conduct that "at various times was outrageous and beyond reasonable bounds of decency resulting into emotional distress to Plaintiff." Am. Compl. at 38-39 ¶¶ 2-3. Neither Butler nor Veney is a defendant in the present action, but Wimbush alleges separately in Count 14 that Kaiser is vicariously liable for their acts and the acts of its other employees and agents. Am. Compl. at 38.

Any claim for intentional infliction of emotional distress ("IIED") on the basis of Veney's conduct, as described in the Virginia allegations, is dismissed because it is barred by the statute of limitations. Although the alleged conduct occurred in Virginia, Maryland's statute of limitations applies. A federal court exercising supplemental jurisdiction over state law claims must apply the choice of law rules of the forum state, in this case Maryland. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Maryland law, the general rule is that "the statute of limitations of the forum state applies, even when the state's choice of law rules require that another state's substantive law be applied." *Sherwin-Williams Co. v. Artra Group, Inc.*, 125 F. Supp. 2d 739, 756-57 (D. Md. 2001); *Lewis v. Waletzky*, 31 A.3d 123, 133 (Md. 2011) (explaining that Maryland law controls procedural matters and that "statutes of limitations are procedural for choice-of-law purposes"). Under Maryland's general statute of limitations, civil suits must be filed within three years from the date the action accrues. Md. Code Ann., Ct. & Jud. Proc. § 5–101. Although the Amended Complaint does not give an exact date for when Veney's alleged conduct ceased, it alleges that Wimbush was transferred out of the call center in Fair Oaks, Virginia, where Veney was her supervisor, in or about January 2011. Am. Compl. at 8 ¶ 1. Wimbush did not file her present suit until February 24, 2014 and pleaded an IIED claim

15

for the first time in her Amended Complaint, which was filed on September 10, 2014. Both dates fall outside the applicable statute of limitations. Furthermore, any time Wimbush spent pursuing administrative remedies for her Title VII claims does not toll the statute of limitations for her related but separate claims. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462-66 (1975) (holding that Title VII claims did not toll the governing state law statute of limitations applicable to a separate claim under 42 U.S.C. § 1981); *McNeal v. Montgomery Cnty, Md.*, 307 F. App'x 766, 771-72 (4th Cir. 2009) (holding that the statute of limitations on the plaintiff's state law claims may not be equitably tolled during the time in which he was exhausting his related Title VII claims). Therefore, the part of Count 15 based on the Virginia allegations is dismissed.[6]

Wimbush's IIED claim on the basis of the Maryland allegations is not time-barred, but the Court dismisses that part of Count 15 for failure to state a claim. To state an IIED claim under Maryland law,[7] a plaintiff must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful

---

[6] In the Response to the Motion to Dismiss, Wimbush argues that the Court should permit an IIED claim under the "continuous violation" doctrine, by finding that Butler's later conduct constitutes a continuing harm that tolls the statute of limitations for Veney's allegedly tortious acts. The continuous violation doctrine tolls the statute of limitations where the violations are continuous in nature, so that a claim is not barred "simply because one or more of them occurred earlier in time." *MacBride v. Pishvaian*, 937 A.2d 233, 240 (Md. 2007), *abrogated on other grounds by Litz v. Md. Dep't of the Env't*, 76 A.3d 1076 (Md. 2013). Here, however, it is clear that Veney's conduct occurred in a different office during a different time period, and the Amended Complaint contains no allegations that Veney and Butler were somehow working together to inflict emotional distress on Wimbush. Therefore, the two incidents constitute separate alleged torts, not a single, continuous violation.

[7] As discussed above in part III.D, Maryland law applies because federal courts apply the forum state's choice of law rules. Maryland law provides that courts should apply the substantive law of the state in which the wrong occurred.

16

conduct and the emotional distress; and (4) the emotional distress is severe. *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992).

The Amended Complaint does not allege sufficient factual allegations to meet the second of these elements. As the Maryland Court of Appeals has explained, the "tort of intentional infliction of emotional distress is rarely viable, and is 'to be used sparingly . . . .'" *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. 1995) (quoting *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992)). To be sufficiently extreme so as to satisfy the second element, the alleged conduct in an IIED claim must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (quoting Restatement (Second) of Torts § 46, comment d (1965)).

Here, Wimbush bases her IIED claim on the allegations that Butler denied her request for FMLA leave to provide medical care to her minor son and told another supervisor that Wimbush was "notorious" for taking FMLA leave. Resp. Mot. Dismiss at 18-19; Am. Compl. at 9 ¶ 7, 15 ¶¶ 6-7. The Amended Complaint also alleges various instances in which Butler treated Wimbush inappropriately or unfairly because of her race, including that Butler ignored Wimbush's other requests for time off, gave better shifts, more clerical assistance, and more feedback to white employees, shut the door on Wimbush, took personal credit for Wimbush's work, and eventually fired her for supporting a fellow employee's discrimination complaint. Am. Compl. at 9-12 ¶¶ 9-27. Even taking these allegations as true and drawing all inferences in favor of Wimbush, these allegations do not state an IIED claim because the conduct, while improper, is not sufficiently outrageous. *See Arabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) ("As inappropriate and repulsive as workplace harassment is, such execrable behavior almost

never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of [IIED] under Maryland law."); *Beye v. Bureau of Nat'l Affairs*, 477 A.2d 1197, 1204-05 (Md. Ct. Spec. App. 1984) (holding that an IIED claim was inadequate as pleaded where the plaintiff alleged that his supervisors gave him poor performance ratings, "threatened to fire him, harassed him and physically assaulted him," in addition to passing him over for promotion and deceiving him into resigning) *cert. denied*, 484 A.2d 274 (Md. 1984). The Court therefore dismisses Count 15.

### F.  Counts 16 and 17:  Invasion of Privacy and False Light

Counts 16 and 17 allege claims for invasion of privacy and false light, respectively, based on Butler's alleged statement to another Kaiser supervisor that Wimbush was "notorious" for taking FMLA leave, which Wimbush alleges caused her to lose a position in the physical therapy department for which she had applied. Am. Compl. at 9 ¶ 7, 39-40.  As noted above, Butler is not a Defendant in this case, but Wimbush alleges separately in Count 14 that Kaiser is vicariously liable for Butler's conduct. *See* Am. Compl. at 38.

Because the alleged tort occurred in Maryland, the Court applies Maryland law. *See supra* part III.D.  The Court of Appeals of Maryland has stated several times that, "in a proper case" Maryland would recognize an action for an unwarranted invasion of privacy, and it has cited with approval four different kinds of invasions of privacy, as laid out in the Restatement of Torts.  *Hollander v. Lubow*, 351 A.2d 421, 424 (Md. 1976) (quoting *Carr v. Watkins*, 177 A.2d 841 (Md. 1962)), *superseded on other grounds by* Md. Rule 2-501(a), (e).  These four types of invasion of privacy are: (a) intrusion upon the seclusion of another, (b) appropriation of the other's name or likeness, (c)  publicity given to the other's private life, or (d) publicity which places the other in a false light before the public.  *Id.* at 425 (internal citation and quotation

marks omitted).   As the facts alleged in no way involve intrusion upon seclusion[8] or appropriation of name or likeness, the Court construes Count 16 as alleging an invasion of privacy claim for publicity given to private life, and Count 17 as asserting an invasion of privacy claim for publicity which places one in a false light.

However, both claims require "publicity," meaning that "the disclosure of the private facts must be a *public* disclosure and not a private one." *Hollander*, 351 A.2d at 426 (internal citation and quotation marks omitted) (emphasis added).  For example, "it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. Ct. Spec. App. 1986) (quoting Restatement (Second) of Torts § 62D cmt. a (1965)).  Here, Wimbush alleges only that Butler "published a defamatory statement to Melissa Reinhardt," a Kaiser supervisor, and makes no claim that the statement was otherwise made public.  Therefore, Counts 16 and 17 fail to allege the requisite element of publicity for invasion of privacy claims and are to be dismissed.

### G. Counts 12-14:  Negligence and Vicarious Liability Claims

In Count 12, Wimbush alleges generally that "[a]ll of the actions in this Complaint demonstrate that Defendant did not act reasonabl[y] towards the Plaintiff," that "Defendant[s] were successful in their design, intent, and plan to cause harm to Plaintiff, especially under Title VII of the Civil Rights Act," and that "Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint."  Am. Compl. 36-37 ¶¶ 5, 10, 11.  To the extent that Wimbush's Response to the

---

[8] "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for unreasonable invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hollander*, 351 A.2d at 425 (internal citation and quotation marks omitted).

Motion to Dismiss clarifies this vague claim, it asserts that "Kaiser's wanton, intentional, negligent conduct rests on the assumption that the employer knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results." Resp. Mot. Dismiss at 15. Based on Wimbush's own representation of the claim, therefore, Count 12 effectively alleges a negligent supervision claim and thus can be analyzed together with Count 13.

In Count 13, which alleges negligent retention, training, and supervision, Wimbush claims that Kaiser breached a tort duty to Wimbush when it hired, retained, and supervised Veney and Butler because Veney and Butler "were allowed or encouraged to violate the law as was done to Plaintiff," and Kaiser "knew or in the exercise of reasonable care . . . should have known" that they were "potentially dangerous" to Wimbush. Am. Compl. at 37-38 ¶¶ 2-3.

Any claim for negligent retention, training, and supervision on the basis of the Virginia allegations is dismissed because, for the reasons discussed above in part III.E., it is barred by the three-year statute of limitations for torts. As for a possible claim based on the Maryland allegations relating to Butler, to state a claim for negligent hiring, supervision, or retention under Maryland law, a plaintiff must establish that (1) the injury was caused by the tortious conduct of a coworker; (2) the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type; (3) the employer failed to use proper care in selecting, supervising or retaining that employee, and (4) the employer's breach of its duty was the proximate cause of the plaintiff's injuries. *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)). Wimbush fails to meet the first of these elements. It is "well established that Title VII violations do not qualify as tortious conduct for the purposes of claims of negligent hiring, training, retention, or supervision, because these claims must be based on

common law injuries." *Russell v. Russel Motor Cars, Inc.*, 28 F. Supp. 3d 414, 419-20 (D. Md. 2014) (internal citation and quotation marks omitted). At the same time, as discussed above, the common law tort claims asserted by Wimbush in Counts 15-17 are to be dismissed for failure to state a claim. Because Wimbush does not have a viable claim of tortious conduct by a Kaiser employee, the claims relating to negligent hiring, supervision, or retention are not viable. Thus, the Court dismisses Counts 12 and 13.

Count 14 separately alleges vicarious liability. Because Title VII effectively imposes vicarious liability on an employer for the actions of its employees, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer."), Count 14 appears to have been included for the purpose of providing a theory of liability against Kaiser for the tortious conduct of Butler and Veney, as alleged in Counts 15-17. *See* Am. Compl. at 38. Because those counts are dismissed for failure to state a claim, *see supra* parts III.E.-F., Count 14 is necessarily also dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Dismissal is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Counts 6, 8-10, and 12-17, which shall be DISMISSED. The Motion is DENIED as to Counts 1-3 and 5. Pursuant to part II., above, Wimbush is granted 14 days' leave to amend her Complaint to correct deficiencies in the jurisdictional allegations. A separate Order follows.

Date: May 4, 2015

THEODORE D. CHUANG
United States District Judge